Melville *v.* American Benefit Building Association.

---◆---

MELVILLE *vs.* THE AMERICAN BENEFIT BUILDING ASSO-
CIATION and others.

The plaintiff, on becoming a member of The American Benefit Building Association, on the 19th of June, 1849, purchased two shares of R., on which $40 had been paid. On the 17th of July he subscribed for four more shares, and agreed to redeem three of his shares, at $191 each, and the other three shares at $195 each, amounting in all to $1158. In pursuance of this agreement, he, on the 18th of July, executed a mortgage to the association, expressing a consideration of $1158, and conditioned for the payment of $21 per month until the termination of the association, and also all fines which should be charged against the mortgagor pursuant to the articles of association, &c. On the 21st of August, 1849, the plaintiff subscribed for ten more shares in the association; at the same time agreeing to redeem five shares at $198 each, and five shares at $199 each, amounting to $1,985, which was afterwards paid to him. He paid the bonus and back dues on each of the ten shares, and executed a second mortgage to the association, expressing a consideration of $1985, and conditioned for the payment of $35 per month, until the termination of the association, and all fines, &c. On the 22d of December, 1849, the plaintiff executed a third mortgage to the association, upon a similar transaction for the redemption by him of five shares at $199 each, amounting to $995; and on the 19th of January, 1850, he executed a fourth mortgage to the association, upon a similar agreement for the redemption of three shares at $185 each, amounting to $555. The considerations specified in these four mortgages and agreements amounted, in the aggregate, to $4693, but the amount of money actually received by the plaintiff, over and above the fees, monthly dues, &c. allowed

and paid by him, was only about $3500; while the payments by the agreements and mortgages agreed and secured to be paid by him were, in the aggregate, $84 per month until the termination of the association. It appearing, from calculations made, that under no circumstances could the association be terminated, pursuant to its articles, in less than from five to eight years from the date of the agreements and mortgages, and that it might and probably would, continue longer than eight years; and that the payment of $84 per month would pay the whole amount of money actually received by the plaintiff, with interest, in about four years; it was

*Held* that the several transactions upon which the mortgages and agreements were made were intended to be loans of money to the plaintiff, at a rate of interest exceeding seven per cent per annum; and that such mortgages and agreements were consequently usurious and void.

THIS action was brought by the plaintiff for the purpose of having certain agreements, made between him and the defendant, The American Benefit Building Association, and several mortgages executed by him to the association in pursuance of such agreements, adjudged to be void as being usurious, and to be delivered up and canceled; and for a judgment directing the money which the plaintiff has paid upon such agreements and mortgages, to be repaid to him with interest.

In June, 1849, the plaintiff became a member of an unincorporated association, formed March, 1849, called "The American Benefit Building Association," which association was governed by certain rules called "The Articles of Association." His membership consisted in his being the owner of one or more "shares," as they are called in the articles— the elements of which shares were an obligation by the owner to pay monthly to the association, upon each share owned by him, the sum of $2.50, during an indefinite period, with an ultimate right to receive from the association at some future day, when the association should wind up and be able to pay it, the sum of six hundred dollars for each share. In addition to this monthly payment, there were certain payments for what are called in the articles " entrance fees," " bonus " and " fines," which the individual who became a shareholder bound himself to pay. The total number of shares was five

Melville *v.* The American Benefit Building Association.

hundred ninety-two and a half. Whenever the association had on hand any surplus funds, they were bound to put up the same for competition, to be bid for by the members, and that member who would agree to receive the smallest sum on each share was entitled to receive the money, upon his paying the entrance fee, a bonus in the discretion of the association, and the monthly dues from the commencement of the association, and upon his executing satisfactory security for the payment of the monthly dues (with a premium of one dollar added thereto) thereafter to become due on such share, and all fines and charges fixed by the articles of association. This proceeding is called in the articles "the redemption of shares," and any member was entitled upon these terms to subscribe to five shares for the express purpose of thus raising money upon them. All the profit to be derived from a share thus "redeemed" was for the benefit of the "unredeemed shares." Nothing was left of the "redeemed shares" except the liability for monthly payments and fines. These fines were for default in the monthly payments, and were, for the first month, 12½ cents, for the second month 25 cents, for the third month 37½ cents, and for the fourth and each succeeding month 50 cents on each share. In July, 1849, the plaintiff having subscribed for six shares, agreed to receive from the association $191 on each of three of the shares, and $195 on each of the remaining three shares, amounting in the whole to $1158, which was paid to him. The plaintiff paid back to the association, out of the same money, $228 for back dues and entrance fees, and also a sum or bonus on the share, and executed to the defendants McGraw, Condit and Mott, (who were trustees appointed by the association,) the instrument firstly mentioned in the complaint, and set forth at length in the answer. In August, 1849, the plaintiff having subscribed for ten shares, agreed to receive from the association $198 on each of five of the shares, and $199 on each of the remaining five shares, amounting in the whole to $1985, which was paid to him. The plaintiff

paid back to the association out of the same money $180 for
bonus and entrance fees, and $425 for back dues, and exe-
cuted to the same defendants, trustees, the instrument sec-
ondly mentioned in the complaint and set forth at length in
the mortgage.   In October, 1849, the plaintiff having sub-
scribed for five shares agreed to receive from the association
$199 on each share, amounting to $995, which was paid to
him.    The plaintiff paid back to the association, out of the
same money, $50 for bonus and $237.50 for back dues, and
,executed to the same defendants, trustees, the instrument
thirdly mentioned in the complaint, and set out at length in
the answer.   In January, 1850, the plaintiff being the owner
of three shares agreed to receive from the association $185
on each share, amounting to $555, which was paid to him.
The plaintiff paid back to the association, out of the same
money, $196.12 for back dues and other charges, and execu-
ted to the same defendants, trustees, the instrument fourthly
mentioned in the complaint and set out at length in the an-
swer.   The aggregate amount received by the plaintiff as the
consideration for the said instruments, after deducting the
sums repaid for back dues, &c., was $3476.   The aggregate
amount paid before the commencement of this suit, by the
plaintiff to the association by way of monthly dues, fines, &c.,
exclusive of the sums paid on obtaining the loans, exceeded
the sum of $1400.   No payment was made by the plaintiff
to the association subsequent to June, 1851.   Subsequent to
June, 1851, at a meeting at which the plaintiff did not at-
tend or vote, the articles of association were amended.   In
July, 1851, certain of the members elected to become entitled
to the benefit of the act entitled " An act for the incorpo-
ration of Building, Mutual Loan and Accumulating Fund
Associations."   And in October, 1851, the members who so
elected became incorporated.   The plaintiff did not so elect,
and was not a party to the act of incorporation.   The corpo-
ration claims to be entitled to the securities, and is defend-
ant in this action.   On the 25th day of September, A. D.

1851, the defendants, McGraw, Condit and Mott, as trustees, commenced proceedings for the foreclosure of the said mortgages by advertisement, claiming to be due the sum of $1093.56, of which $612.50 was alleged to be due for monthly payments and $362 for fines, and further claiming that upon a sale of the premises they were entitled to receive the whole of the purchase money, to be held by them as security for future monthly dues and fines. The action was tried at a special term in the city of New York, in April, 1857, before Justice MITCHELL; who, after hearing the proofs adduced by the parties, and the arguments of counsel, directed a judgment to be entered declaring the instruments set forth in the complaint to be usurious and void, and ordering and adjudging that the defendant deliver up the same and all other securities for the payment of the money therein mentioned, to the plaintiff, with good and sufficient satisfaction pieces, or other releases or discharges of the said mortgaged property, acknowledged, so that the same might be satisfied and discharged of record; and that the defendant be forever enjoined and restrained from taking any proceedings for the foreclosure or collection of the said mortgages, or of the money secured thereby, or for the sale of the premises therein described.

The following opinion was given by the justice, on deciding the cause at the special term.

MITCHELL, J. "This action is by a mortgagee, to have several mortgages given by him cancelled as usurious and void. One of the mortgages is a fair sample of the others. The plaintiff borrowed $1985, and agreed to pay $35 a month until each share of the association should be worth $600, and in case of default in making any monthly payment, then to pay the further sum of $2.25 for the first month, $2.50 for the second month, $3.75 for the third, and $5 for the fourth month, and for each succeeding month. At the time each share was estimated at about $193. If the plaintiff were charged simple interest on the $1490, and had

paid $25 a month, or $420 per annum, and the payments were credited to him only at the end of the year, the whole principal and interest of the debt would be paid in less than six years. There is not the slightest evidence that there was any probability that in the most favorable circumstances for the association, their shares could become in six years three times as valuable as when the mortgage was given, as should be the case to make each share worth $600. The arrangement can therefore be regarded only as a contrivance to avoid the appearance of usury, and yet to charge much more than the legal interest. The effect of it also was certain ruin to every borrower; and if the association should continue 10 or 20 years, the borrower would still be bound to pay his $420 per annum, during all the continuance of its existence beyond the six years, when he would have paid all the principal and interest on his loan; and he, for all the time beyond the first six years of the loan, would receive no benefit from the association. If, in addition to this, he should make default in his monthly payments, he would be liable, in addition to the $420 per annum above mentioned, to pay the fines also above stated, those would be $47.50 for the first year, and $60 for each of the remaining five years, (if the calculation is limited to six years,) and for the non-payment of the $35 for the first month only, which would be $347.50, for that one month's default. The second month's default would be $5 less, and as each would diminish by $5 in arithmetical progression for 68 months, and the remaining three months would be $1.25, $2.50 and $3.75, or $7.50 together, thus the fines alone would be nearly $12,000 when the six years were ended.

Whatever aversion may be naturally felt to declaring a contract void for usury when the excess is but small, there should be no hesitation in pronouncing such a contract as this, within the law against usury. It would be more agreeable (as was held in cases where the contract was made with similar institutions after they were incorporated under

Melville *v.* American Benefit Building Association.

an act which prevented the associates from alleging usury in such contract) to decide that it was void, only on account of its not being possible that the contract could have been understood by the borrower, or intended to be entered into by him in such a form. This mortgage was executed before that act was passed, and is not prohibited by it.

The nature of the articles of association leads to the conclusion that the very object of this association was to evade the usury laws, and to enable such of the members as were able to lend money and to pay their dues, to take advantage of the poor who were compelled to borrow, and too ignorant to comprehend the nature of the bargain made by them.

The defendants must surrender the bonds and mortgages and cause them to be cancelled of record. The costs are in the discretion of the court, and may be left to each party to bear his own."

From the judgment entered in pursuance of the above decision the defendants appealed.

*D. P. Barnard,* for the appellants.

*R. S. Emmet,* for the respondent.

*By the Court,* BONNEY, J. The plaintiff by his complaint alleges that certain agreements made between him and the association (now corporation) called the "American Benefit Building Association," under which he received certain sums of money, and several mortgages made by him pursuant to such agreements, are usurious; and he demands to have such agreements and mortgages adjudged to be void and to be delivered up and cancelled, and to have the money which he has paid thereon, repaid to him with interest. The defendants deny that there is any usury in the transactions referred to, and insist that said agreements and mortgages are valid.

There is no controversy as to the facts of the case. The

court, at special term, adjudged the several agreements and mortgages made by the plaintiff, and mentioned in the pleadings, to be usurious and void. From this judgment the defendants have appealed. The plaintiff executed to the building association three mortgages, each upon a distinct and separate agreement, but under, substantially, the same circumstances, and the question as to each of them is, whether the transaction was in intent and effect a loan of money, as to which usury can be predicated; or a dealing with the copartnership or associated funds for the common benefit of the association, and the members comprising it, pursuant to their articles of association. If the transactions are loans, then it is scarcely denied that they are usurious; if not loans, they cannot be affected with usury.

The articles of association of The American Benefit Building Association, adopted in April, 1848, (among other things,) provide—that there shall be a meeting of the association on the third Tuesday in each month; that the members of the association shall be those who subscribe the articles and hold one or more shares; the number of which is not limited: that every member of the association, at the first regular meeting after the adoption of the articles, and at each regular meeting thereafter, shall pay for each share subscribed by him $2.50 as monthly dues, during the continuance of the association, and for any neglect in so doing, shall be fined for non-payment of such monthly dues on each share as follows: for the first month $12\frac{1}{2}$ cents, second month 25 cents, third month $37\frac{1}{2}$ cents, fourth and each succeeding month 50 cents; and when the fines charged shall be equal to the monthly dues paid on every share, such share shall be forfeited, and its holder considered as yielding up all interest therein: that, until the third regular meeting of the association, after the articles shall go into effect, every new member shall pay an entrance fee of fifty cents per share; after which time new members, or members subscribing for additional shares, shall, *in addition to the entrance fee and monthly dues from*

Melville *v.* American Benefit Building Association.

*the commencement of the association,* pay such bonus per share, as the standing committee shall judge to be sufficient to place the new members or new shares upon the same footing as the original shares : that whenever the funds of the association shall amount to enough for the redemption of one or more shares, *the same shall be applied to the redemption of any share, the holder of which shall offer to receive the lowest sum therefor ; and any member whose offer has been accepted, may subscribe to as many additional shares,* not exceeding five at one time, as he may desire to have redeemed, which shall be so redeemed out of the funds on hand, or the first funds which shall be received thereafter : that immediately upon the acceptance of an offer for redemption, the money shall be set apart to the member *to be paid over to him* upon his giving *approved security by mortgage* on real estate, conditioned that *he will regularly pay to the association during its continuance, the monthly dues upon each share redeemed by him, and a premium of one dollar per month per share in addition thereto,* to commence from the time the money shall be so set apart ; and that he will perform all other engagements entered into by him to the association, in reference to the mortgaged premises, with provisions for the sale of the premises in case of default on the part· of the mortgagor : that any member may transfer any unredeemed shares held by him to another member, on the payment of one dollar for each share transferred—or to a person not a member, upon such person being elected a member— and paying an entrance fee·of one dollar per share in addition to the one dollar per share for each share so transferred : that any member may withdraw any unredeemed shares held by him on giving notice to the standing committee, who shall within one month repay to such member the monthly dues per share received from him ; deducting all claims against him, and deducting, if the application be within one year from the commencement of the association, five dollars per share ; if within two years, three dollars ; and if within three years,

one dollar per share; after four years, the withdrawing member to receive such amount in addition to the monthly dues paid, as the standing committee shall judge reasonable : that whenever it shall appear by the books of the association that there is sufficient money on hand and due the association to pay, on each unredeemed share, to the holder thereof, the sum of six hundred dollars, over and above all debts and liabilities of the association, all arrears of monthly dues, fines and otherwise, shall become at once payable and shall be paid without delay ; and the standing committee shall then pay all debts and liabilities of the association, and divide all the residue of the assets among the holders of the unredeemed shares pro rata, as realized :" and thereupon the association shall be wound up and cease to exist.

The plaintiff became a member of the association by subscribing the articles, and being elected on 19th June, 1849 ; and he then purchased two shares of James Roach, on which Roach had paid $40.   On 17th July, 1849, the plaintiff subscribed for four additional shares, and, at the regular meeting held on that day, he agreed to redeem three of his shares at $191 each, and his remaining three shares at $195 each, amounting in the aggregate to $1158.   On 18th July, in pursuance of this agreement, he made the first mortgage now in question ; on 25th July this mortgage was accepted by the standing committee ; on 27th July plaintiff received on account of the redemption of said six shares, $950, and then paid the back dues on the four additional shares subscribed by him, and on 14th August he received $208, the balance of said redemption.

By said mortgage, dated 18th July, 1849, the plaintiff, in consideration of said $1158, thereby expressed and admitted to have been received, conveyed by way of mortgage the premises in the mortgage described, upon condition that if he or his representatives or assigns should pay the sum of $21 per month, commencing on the 3d Tuesday of August, 1849, and continuing until the termination of " The American

Benefit Building Association," the articles whereof had been signed by him, and also all fines which should be charged against him or his assigns pursuant to said articles; and should keep the buildings on the premises insured, and also keep and perform all the agreements entered into by him with the other members of the association, the said mortgage should be void. The mortgage contains a power of sale, and provides for the disposition of the proceeds thereof pursuant to article 20 of the articles of association.

On or about 21st August, 1849, the plaintiff subscribed for ten additional shares in said association; and, at the regular meeting of the association on that day, agreed to redeem five shares at $198 each, and five shares at $199 each, amounting to the sum of $1985, which was afterwards paid to him, and he paid the bonus and back dues on each of the ten shares, and then executed the second mortgage, now in question, purporting to be made for the consideration of $1985, and conditioned for the payment of the sum of $35 per month, commencing on the third Tuesday of September, 1849, until the termination of the association pursuant to its articles, and all fines which should be charged against him, &c.

The third mortgage or agreement, dated 22d December, 1849, was made upon a similar transaction for redemption of five shares of $199 each, amounting to $995; and the fourth mortgage or agreement, dated 19th January, 1850, was made upon another similar transaction for redemption of three shares of $185 each, amounting to $555. The considerations · specified in said four mortgages and agreements amount in the aggregate to $4693·; but the amount of money actually received by the plaintiff, over and above the fees, monthly dues, &c. on said shares, allowed and paid by the plaintiff, was only about $3500, and the payments by said agreements and mortgages agreed and secured to be paid by the plaintiff were, in the aggregate, $84 per month, until the termination and winding up of the association.

The redemption first above mentioned comprised all the

shares which the plaintiff then had, and upon the making of said first mentioned mortgage, although still (as I understand the effect of the articles) nominally a member of the association, his only relation thereto was that of a debtor. Upon no possible contingency could he have any beneficial interest, by reason of those shares, in the property of the association. And the same may be said as to each of the other redemptions. Since the making of the last mortgage the plaintiff had not had (so far as appears) any interest in the concern.

By calculations which have been made and submitted, it is shown that under no circumstances could the association be terminated, pursuant to its articles, in less than from five to eight years from the time when these mortgages and agreements were made; and that it might, and probably would, continue longer than eight years; and that the payment of $84 per month would pay the whole amount of money actually received by the plaintiff, with interest thereon, at the rate of seven per cent per annum computed, and said payments applied according to law, in about four years.

Upon these facts I am forced to the conclusion that these several transactions between the plaintiff and the Building Association, upon which the said mortgages and agreements were made, were intended to be loans of money to the plaintiff at a rate of interest exceeding seven per cent per annum, and that such mortgages and agreements are consequently usurious and void.

The plan of the association is such, and its articles are so framed, as necessarily to give to every holder of shares who pays his dues, and so invests money in the concern, a larger interest than seven per cent, on the amount of his investment, at the expense of those members who may obtain (in effect borrow) money of the association by means of shares *redeemed*, as by said articles of association provided; and I must therefore presume that such was the purpose and intent with which the association was formed. If the object and expectation of the persons forming the association were not

that its funds should be used in the redemption of shares pursuant to the articles, it would be difficult to assign any sufficient reason or inducement for taking shares therein, as the income of its accumulated capital from every other source, over and above expenses, could not be expected to equal seven per cent per annum, and might and probably would be much less; and the prescribed rule of giving the preference in redemption to the shares offered at the lowest price was well devised to obtain the greatest sacrifice—in effect the highest rate of interest—from the most necessitous of the members; and any person could, (as it is quite clear this plaintiff did,) become a member and take new or additional shares for the express purpose of immediately redeeming them (as it is termed) and so obtaining money therefor.   In the view I take of these articles and the transactions under them, the members of the association are divided into two classes, the holders of unredeemed shares, who are the owners and lenders of the moneys of the concern, and those who have been holders of shares now redeemed and who are the borrowers of said moneys at largely usurious rates of interest.   The provisions of the articles are such, that their practical effect would not readily be understood, especially by the class of persons most likely to wish to obtain money, by taking shares, with intent that they should be immediately redeemed.

The English cases which have been cited by the defendant's counsel are distinguishable from the present, in that all those cases arose out of transactions of associations formed under and authorized by statute.   (*Act of 4 and 5 Will. 4, ch.* 40. *Silver* v. *Barnes,* 6 *Bing. New Cases,* 180.   *Burbridge* v. *Cotton,* 8 *Eng. L. and Eq.* 57.   *Seagrave* v. *Pope,* 15 *id.* 477.)

In the case of *Johnson* v. *Clarke et al.* in the U. S. circuit court for the district of Columbia, the calculations showed that there was in fact no usurious interest reserved by the agreement complained of.   To some of the legal conclusions stated in the opinion in that case, furnished to me in manuscript, I cannot assent.   The case before us is in nowise

affected by the act for the incorporation of building associations, &c. passed 10th April, 1851, (*Laws of* 1851, *ch.* 122, *p.* 234,) and the subsequent incorporation of the association in question under that act, inasmuch as the act was passed subsequent to all the transactions now in question.

In my opinion the judgment rendered at special term should be affirmed, with costs.

[New York General Term, November 5, 1860. *Sutherland, Bonney* and *Hogeboom,* Justices.]