JOSIAH D. PAYNE, AS TRUSTEE FOR THE SCHUYLER COUNTY BANK, APPELLANT, *v.* ELIZABETH H. FREER, IMPLEADED, ETC., RESPONDENT.

*Usury — one partner may lawfully agree to pay ten per cent for the use of the partnership money.*

An agreement between several co-partners who have all contributed to the partnership fund, that each shall be allowed at a rate of six and one-half per cent per annum upon the average amount of his deposits, and shall pay interest at the rate of ten per cent per annum upon all over-drafts from the partnership fund, is not usurious.

The fact that the notes of one partner were taken up with the money of the partnership, and that he was charged ten per cent interest upon the amount so expended, does not render the transaction usurious.

APPEAL from a judgment entered at the Schuyler County Special Term dismissing the plaintiff's complaint. The action was brought to foreclose a mortgage executed by George G. Freer and wife to Josiah D. Payne, as trustee for the Schuyler County Bank. The mortgage was given to secure the payment of $52,383, and was intended as a security for the payment of certain moneys due from said Freer to said bank.

This action was tried before the court without a jury.

The court found, among other things, that on or about the 20th of March, 1873, George G. Freer, Josiah D. Payne and William M. Pellet entered into an agreement in writing, called articles of co-partnership, with the intention and for the purpose, as therein expressed, of forming a partnership in the business of private bank-

ing in the firm name and style of The Schuyler County Bank, for the term of ten years, unless sooner dissolved, and thereby it was provided that the business of the firm should be carried on at Watkins, N. Y., and that it should be confined exclusively to that of private banking, and be conducted on the same principle, so far as practicable, as that of national banking associations, etc., and it was thereby stipulated as follows: "To each or either of the said co-partners, there shall be allowed a rate of six and one-half per cent on the average amount of his deposits, to be computed on the first Monday of January in each and every year, and on over-drafts, either and each who may overdraw his accounts shall pay interest on the average of such over-drafts at the rate of ten per cent per annum, to be computed and paid on the said first Monday of January in each year, but in this connection it is understood that neither of said co-partners shall overdraw his account in said bank without the consent of the other partners," and it was thereby further agreed and understood that the members named therein should each put in, in their notes or money, $20,000, as capital, but they afterwards modified that provision so as to make the amount each should thus put in as capital, $10,000, for which they put in their notes respectively. That it was also provided by their said agreement that other persons might be let into the firm by the unanimous consent of the members thereof, and pursuant to that provision, etc., soon after the date of the agreement, John Knight, William N. Love and Edgar S. Payne were let into and became members of said firm, and that the said firm commenced business on or about the first day of April, 1873.

That the firm had books of accounts and opened and kept therein an account with each member thereof, and with its customers, giving him and them credit for his and their several deposits, and charging to him and them the several sums of money advanced to and for him and them by the firm, upon his and their checks drawn upon the said Schuyler County Bank and otherwise.

That from and after the expiration of the first year of the business of said bank, the books of said bank showed quite uniformly a balance against George G. Freer, whose executors are parties defendant to this action, in his account with the said bank, and that the firm (The Schuyler County Bank) computed and charged to

him, in his said account, each and every year, interest at the rate of ten per cent per annum upon all the debit items of his account in excess of his credits on the books.

That the interest, at the rate of ten per cent per annum, so computed upon the debit items of his account and charged to him, were as follows:

| | |
|---|---:|
| April 13th, 1874 | $145 25 |
| April 15th, 1875 | 657 04 |
| April 15th, 1876 | 1,230 50 |
| November 10th, 1876 | 1,336 10 |
| Making | $3,368 89 |

Exclusive of interest on the $10,000 stock note, so-called, upon which interest was computed at the rate of seven per cent per annum.

It appeared that the Schuyler County Bank advanced the money and paid certain notes of said George G. Freer, among others a note given to G. G. Hill, some time prior to the dates under which charges therefor were made to him in the books. That in those instances interest at the rate of ten per cent was computed by said bank upon the amount so advanced, which constitute entries so made on his account therefor.

That the provisions of said agreement, called articles of co-partnership, whereby it was agreed that the said George G. Freer should pay interest at the rate of ten per cent per annum on over-drafts, was not inserted in and made part of the agreement for the purpose nor with the intent that the said Schuyler County Bank should receive, and the said George G. Freer should pay a greater rate than seven per cent per annum for the loan or forbearance of money, which the said Schuyler County Bank should or might make to him; that an over-draft within the meaning of the contract was not a loan of money, but an advancement out of the common funds, and the interest returned therefor was for the common benefit, and partook of the risks and hazards of the business.

As conclusions of law the court found—

1. That the articles of co-partnership are not *per se* usurious.

2. That a portion of the items in the account which formed the indebtedness which the mortgage in question was given to secure,

being properly over-drafts within the meaning of the articles of co-partnership, and not loans of money, and ten per cent interest being charged thereon in pursuance to said articles, are not usurious.

3. That the transaction in regard to the Hill notes and some other transactions, not being over-drafts within the meaning and intention of the articles of co-partnership, the same must be deemed loans of money, and ten per cent interest being charged thereon, under a corrupt and usurious agreement and understanding with said Freer, come within the prohibition of the statute in such case made and provided, and that such usurious items having entered into and formed a part of the debt which the mortgage in question is given to secure, the mortgage is therefore usurious and void, and must be set aside and held for nothing.

*Warren Barnum* and *J. McGuire*, for the appellant.

*W. L. Norton* and *George B. Bradley*, for the respondent.

BOCKES, J.:

The learned judge before whom this cause was tried found and decided as matter of law that the provision in the articles of copartnership, stipulating for the payment or allowance of ten per cent to the partners respectively on the average of their overdrafts in their bank or partnership accounts, did not render the instrument void for usury. This decision was put on the ground that an over-draft, within the meaning of the contract, was not a loan of money, but was an advancement out of the common funds, and the interest returned therefor was for the common benefit, and partook of the risks and hazards of the business. We are inclined to adopt this conclusion as sound in law.

The business capital of the partnership consisted of a joint fund contributed by the parties, with such addition as their business as private bankers would afford by way of deposits. On their capital they were to conduct the business of banking, in the same manner and upon the same principle that the business of national banking associations was conducted, by virtue of the power conferred upon the latter by the so-called national currency act and its amendments, with an exception as to the amount of reserve fund to be kept on

hand. The term of the partnership was ten years, with the right of an earlier dissolution on consent of the partners, and the latter were to bear the losses of the business alike, and were to share equally in its profits. Now, in the first place, it appears that all advances to the partners on overdrafts would be made from the joint or partnership fund; and, secondly, the result of the business only could determine whether or not there would be any profits to divide. There was, consequently, just that state of hazard connected with the business which would, according to the authorities, rescue the case from the effect of the statute against usury. It was not certain at all that either member of the partnership would ever get a return of lawful or of any interest whatever on his contribution to the fund, or indeed of any of such contribution itself. It is by reason of the risk and hazard attending bottomry or *respondentia* securities that they are held not to be within the statute of usury. So in Ord on Usury (39), it is laid down as follows: " Recollecting that an usurious contract must be grounded on a loan, which implies a return of the principal, we may thence conclude that if money be advanced for a premium which exceeds legal interest, on a hazard or contingency, and is not to be repaid at all events, the contract is not usurious." Of course the hazard must be real and substantial, not a slight and merely colorable risk, and not put forward in appearance merely to cover up a corrupt purpose. The doctrine above extracted from Ord on Usury is also reiterated in Kelly on Usury (50), and in Comyn on Usury (21 and 28). The rule of law is, too, very neatly stated in Tyler on Usury (185), as follows: " Upon the same principle of contingency or hazard when persons are actually in partnership, an advantage to be taken out of the trade may be reserved in any way agreed upon, without subjecting the agreement to the charge of usury, for the moneys are not laying at interest, but employed in making profits, subject to losses; and although one partner retires, still if he continues liable to be sued the agreement for such advantage can not be usurious." (See cases cited, pages 186, 187.) The doctrine above stated has been repeatedly recognized as sound by the courts; indeed it has never been questioned. (See the following cases: *Delano* v. *Wild*, 6 Allen, 9; *Silver* v. *Barnes*, 6 Bing. [N. C.], 180; 37 Eng. Com. Law, 571; *Fereday* v. *Hordern*, 1 Jacob, 144; 4 Eng. Ch., 144; *Bur-*

*bridge* v. *Cotton*, 8 Eng. Law and Eq., 57; *Gilpin* v. *Enderbey*, 5 Barn. & Ald., 954; 7 Eng. Com. Law, 519; *R. B. B. & L. Ass.*, 27 N. J. Eq., 223; also *Mills* v. *S. B. & L. Ass.*, 75 N. C., 292; *Hubert* v. *K. B. & S. Ass.*, 11 Bush., 296; *Melville* v. *A. B. B. Ass.*, 33 Barb., 103.) While the above cases may not seem to be entirely harmonious in their conclusions, none of them intimate a doubt as to the correctness of the rule of law above eliminated from the text books. The apparent want of harmony in them has arisen rather from a supposed different state of facts than from any doubt as to the law applicable to cases of partnership wherein the question of usury has been raised between partners. We are of the opinion that in this case the stipulation in the articles of partnership, brought under examination, provided for the use of partnership funds; and, further, that the partners might agree for such use and employment of them as to them might seem best, without bringing their agreement within the purview of the statutes against usury. The learned judge was right, therefore, in holding that the articles of copartnership in this case were not void for usury.

This being so found, it seems to us to carry with it the entire case, and that the learned judge should have further found that all the transactions proved before him were of like character as those covered by the stipulation relating to overdrafts. It was competent for the partners to agree between themselves as to the manner in which the partnership funds should be employed, and they might as well agree that the partnership would apply its funds to the use of one of its members at ten per cent on notes, as on overdrafts. In both cases it would be an agreement as to the mode of using the partnership funds by one of the partners. As regards the transactions relating to the notes of Freer, or on which he was liable, the agreement in effect was this: that advances might be made on them or in their payment from the partnership funds, at an allowance on the money so advanced or employed in the transactions relating to them of ten per cent. This was in legal effect and in fact the same as was the agreement as to the overdrafts, embodied in the articles of partnership, and different from the latter only in the fact that it related to notes instead of overdrafts, and rested in parol. If the agreement as to overdrafts was not open to the impu-

tation of usury, the agreement as to the Freer notes was not within the denunciation of the statute. In both cases, as above suggested, the agreement related to the way or manner in which the partnership funds should be employed, and the transactions partook alike of the contingencies and hazards which attended the general partnership business.

The parties did not regard those agreements as at all differing in their nature or effect. Indeed, by consent of all concerned, the notes were put on the same footing with the overdrafts in so far as the use and employment of the partnership funds were concerned. The notes were carried into Freer's account on the firm or bank books, and were treated, as regards the moneys applied upon them, or to their payment, the same as were the overdrafts. It might well be found that the agreement, implied from the manner in which the business was conducted, was to the effect that all moneys of the firm which should be advanced on or applied to the payment of Freer's notes, for his use or benefit, should stand subject to like stipulation as that contained in the articles of copartnership relative to advances on overdrafts.

In conclusion we are of the opinion that the finding declaring the bond and mortgage in suit usurious and void was erroneous. The judgment must, therefore, be reversed.

BOARDMAN, J., concurred; LEARNED, P. J., not acting.

Judgment reversed, new trial granted, costs to abide the event.