T. W. T. RICHARDS, PLAINTIFF IN ERROR, v. HERMAN KOUNTZE, DEFENDANT IN ERROR.

1. **Usury.** A note drawing legal interest is not affected with usury, by an indorsement of the maker, made after maturity, wherein he promises to pay a greater rate of interest than that allowed by law. In such case, money paid in excess of lawful interest constitutes a payment, *pro tanto*, of the principal.

2. **National Bank:** MORTGAGE. Notes secured by mortgages were assigned to a National Bank, and by it to plaintiff. *Held*, in an action of foreclosure, that the mortgages were not extinguished by the assignment to the bank, and were valid in the hands of the plaintiff, he being a bona fide purchaser.

3. ———: EVIDENCE: PRESUMPTIONS. In the absence of evidence showing the purpose and object of the assignment to the bank, it cannot be presumed that it was for a debt created *in presenti*, in violation of the National Banking Act.

Richards v. Kountze.

4. ———. *Semble*, that the limitations of the act apply to transactions in real property, independent of legitimate banking operations, and not to mortgage securities.

ERROR to the district court of Douglas county.

THE action was upon four promissory notes, executed by Richards, the plaintiff in error, dated April 6, 1870, payable one year after date with interest at the rate of ten per cent per annum, secured by mortgages upon real estate situated in Omaha, and made payable to the order of John A. Parker. The notes and mortgage securities were assigned by Parker to Augustus and Herman Kountze, who afterwards assigned them to the First National Bank, by whom they were assigned to Herman Kountze, the defendant in error, who brought this suit to foreclose the mortgages and recover the debt secured by them.

· After the maturity of the notes, and while they remained in the hands of the bank, Richards indorsed the following upon each note:

"For value received I promise to pay interest at rate of 12 per cent. per annum from maturity until paid. T. W. T. Richards, Omaha, Nov. 29, 1871."

In pursuance to this agreement, Richards paid interest from maturity to date of agreement, being $2.24 interest additional to the 10 per cent mentioned in the notes. The statute then in force concerning interest was as follows:

"Sec. 2. Interest upon the loan or forbearance of money, goods or things in action, shall be at the rate of ten dollars per year upon one hundred dollars, unless a greater rate, not exceeding twelve per cent. per annum, be contracted for by the parties." *Laws* 12 *Sess.*, 1867, *page* 8. *Genl. Stat.*, 446.

Section 28, of the National Banking act, provides as follows:

"It shall be lawful for any such association to purchase, hold, and convey, real estate as follows:

1.    Such as shall be necessary for its immediate accommodation in the transaction of its business.

2.    Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

3.    Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

4.    Such as it shall purchase at sales, under judgments, decrees or mortgages, held by such association, or shall purchase to secure debts due to said association.

Such association shall not purchase or hold real estate in any other case or for any other purpose than is specified in this section." 13 *U. S. Statutes at Large*, 107.

The court below rendered a decree in favor of Herman Kountze for the principal of the notes with interest at 10 per cent, and for a sale of the mortgaged premises. Richards brought the case here by petition in error.


*T. W. T. Richards, pro se.*


I.    The contract entered into Nov. 29, 1871, and indorsed upon the back of the notes, was usurious. It took the place of the original provision as to interest contained in the notes, and when the defendant in error took the notes from the bank he took them with this new contract incorporated into them, and in his original petition he claims interest under this new contract. In his amended petition, however, he discards the usurious contract, and swears that he never claimed interest under it. It is insisted, however, that as the usurious agreement was a part of the notes, and specially made so by the bank and the maker of the notes, when he received them from the bank, and he had a full knowledge of the contract, and afterwards demanded and sued for interest under it, and thereby ratified it, that he cannot after-

wards be heard to discard it, and claim under the original contract only, which was in fact never transferred to him.    It was the modified contract only which was transferred to him.    The original contract, as to rate of interest, had been superceded by the contract of Nov. 29, 1871.    It is therefore insisted that all interest paid in pursuance of said agreement ($144.00) should be credited upon the principal ($800.00), and that no interest should have been allowed, and that the defendant in error should ' have had a decree for only $656.00.    It is not contended that the original contract was usurious, but that the subsequent agreement ingrafted upon it is clearly usurious—and upon this point plaintiff in error refers to the following authorities: *Rock County Bank v. Wooliscroft*, 16 *Wis.*, 22.    *Hunt v. Bloomer*, 5 *Duer*, 202. *Ferrier v. Scott's Admr's*, 17 *Iowa*, 578.    *Hopkins v. Koonce*, 6 *Gratt.*, 387.    *Mattock v. Mallory*, 19 *Ala.*, 694.    *Meiswinkle v. Jung*, 30 *Wis.*, 363.    *Barnes v. Pilgrim*, 24 *Texas*, 385.    *M'Allister v. Jerman*, 32 *Miss.*, 142.    *Shirley v. Welty*, 19 *Ill.*, 623.

II.    But plaintiff in error insists that under the provisions of the National Banking Act, the bank could not purchase either from Parker or the Kountzes the mortgages in question, and any sale to them would be absolutely prohibited by the statute, and void.    The only title the bank could take would be the notes.    If Parker sold to the bank, the bank took no title to the mortgages, and could transfer none to Herman Kountze; and *a fortiori* the latter could not foreclose the mortgages and cannot maintain this action.    The bank taking no title to the mortgages it follows as a necessary sequence, that the notes and mortgages became separated, and the mortgages became *ipso facto* extinguished, and ceased to be a subsisting demand.    See especially the case of *Fowler v. Scully*, 72 *Penn. State*, 456, and the following: *Langdon v. Buel*, 9 *Wend.*, 84.    *Merrick v. Bartholick*

36 *New York*, 44. *Aymar v. Bill*, 5 *John's Ch.*, 570. *Jackson v. Blodgett*, 5 *Cow.*, 296. *Huntington v. Smith*, 4 *Conn.*, 237. *Southerin v. Mendum*, 5 *New Hampshire*, 432. *Green v. Hart*, 1 *Johns.*, 580.

*George I. Gilbert*, for defendant in error.

The contract was not for the "loan or forbearance of money." No money was loaned, and no agreement was made to exténd the time or forbear the payment of the money due or to become due. Richards had been in default for several months, and had already received all the consideration for the contract. The indorsement on the notes was a simple promise on the part of Richards. The day after or even on the very day the promise or contract was made, suit might have been commenced by the bank on the notes and mortgages, and the promise would not have afforded any defense or bar to the action. So far as the question of usury is involved in the case, it is the same as though Richards had paid the $2.24 on the 29th day of November, 1871, and made no agreement at all as to the rate of interest after that time. Could such a payment vitiate the note? I think not. But admitting that the contract with the bank was usurious, it was made subsequent to the time of the loan, and cannot avoid or affect the notes. When a security which is given on a loan of money is valid at its creation, no subsequent agreement of the borrower to pay an usurious premium for a further forbearance of the loan will invalidate the original security or prevent the collection of the money lent, with legal interest thereon. *Crane v. Hubbell*, 7 *Paige, Ch.*, 413. *Merrills v. Law*, 9 *Cow.*, 65. *Wells v. Chapman*, 13 *Barb.*, 561. *Hammond v. Hopping*, 13 *Wend.*, 505. *Rice v. Welling*, 5 *Wend.*, 597. Even had the bank agreed to extend the time of payment of the notes to some fixed day, in consideration of the

increased rate of interest, such an agreement would not only fail to sustain the defense of usury in an action on the notes by the bank, and much less in this action by the indorsee of the bank, but the agreement itself to pay the excess of interest would not be usurious. *Stewart v. Petree*, 55 *New York*, 621.

GANTT, J.

It is contended that the indorsement of the agreement on the notes by Richards, the plaintiff in error, affected the original contract of debt with the vice of usury; and therefore, it is insisted that the decree was rendered for too large an amount, and is contrary to law and ought to be reversed. The question thus presented for consideration is, does the promise indorsed on the notes taint the original contract with the vice of usury? In the determination of this question, I think it is sufficient to observe that the rules of law in respect to usury seem to be well settled, and that they may be stated in the following propositions, deduced from the authorities, without reproducing the reasons upon which they are founded.

1. It is a cardinal principle in the doctrine of usury, which must be regarded as the common place to which all reasoning and adjudication upon the subject should be referred, that to constitute usury, there must be a loan or a good consideration for the forbearance of a loan in contemplation by the parties. It must be an original contract. *Nicholas v. Fearson*, 7 *Peters*, 413. *McGill v. Ware*, 4 *Scam.*, 24.

2. Where by the terms of the contract between the lender and the borrower, the lender receives or reserves a greater rate of interest than the maximum allowed by law, such contract is affected with the vice of usury; and it makes no difference whether the usurious interest

is expressed in terms in the instrument given for the payment of the debt created by the loan, or whether it is taken as a bonus, or, is secured by any other corrupt agreement, device, or shift, at the time of the contract. The whole transaction constitutes only one contract. *Gillman v. Woolcock*, 13 *Wis.*, 589. *Lear v. Yarnell*, 3 *A. K. Marsh.*, 419. *Merrils v. Law*, 9 *Cow.*, 65. *Bank of the United States v. Waggoner*, 9 *Peters.*, 399.

3. If the original contract is *bona fide*, and wholly free from the taint of usury, then no subsequent agreement to pay usury, or an usurious premium upon the debt, will invalidate the instrument given for the payment of the debt, or affect the original contract with the vice of usury, or prevent the collection of the debt with its legal interest. And this proposition, I think, is well founded in principle and just in equity, for, if there was once a valid subsisting debt, bearing interest, the contract creating such debt cannot be impaired or destroyed by a subsequent void agreement. Such agreement would be a mere nullity, and could not impair or destroy rights acquired under a valid subsisting contract. *Stewart v. Petree*, 55 *New York*, 623. *Rice v. Welling*, 5 *Wend.*, 597. *Rogers v. Rathbun*, 1 *Johns. Ch.*, 367. *Early v. Mahon*, 19 *Johns.*, 150.

4. If money should be paid as a premium upon a loan, or as usurious interest on a debt, the money so paid would in equity be considered as a payment *pro tanto* upon the original debt; and under the statutory provisions of our state, if such usurious interest has been directly or indirectly contracted for, taken or reserved in the original contract for the loan, the lender shall only receive the principal without any interest or costs, and if such interest be paid, it shall be deducted from the principal. *Crane v. Hubbel*, 7 *Paige*, 417. *Merrills v. Law, supra*, and see generally: 1 *H. Black.*, 462. 7 *Mod.*, 119.

*Murray v. Hardwicke*, 2 *W. Black.*, 859. *Floyd v. Edwards, Cowp.*, 112. 3 *Campbell*, 119.

In the case under consideration there was a valid subsisting debt, bearing the legal rate of interest. The contract by which this debt was created was unaffected by usury, and therefore as is said in *Nicholas v. Fearson*, it "can never be invalidated by any subsequent usurious contract." Hence, it follows as a legal sequence that the promise indorsed on the notes, by the plaintiff in error, is utterly void and cannot modify or impair the original contract. This subsequent promise could pass nothing by the transfer of the notes and mortgage securities to the defendant in error. Whatever rights he acquired by the assignment to him of the notes and mortgage securities, he acquired them under the original contract creating the debt. Therefore this case clearly comes within the rule enunciated in the third proposition.

Again as a defense, it is contended that when the notes passed into the hands of the bank, the mortgage securities became extinguished, on the ground, as alleged, that under the act of Congress in relation to National Banking Associations, the bank could not hold and convey real estate under the purchase of the mortgage securities in this case; hence, the mortgage securities became separated from the debt.

Many authorities were cited to show that the mortgage security is an accessory or incident to the debt, or the instrument given as the evidence of the debt; and that the mortgage security cannot be separated from the debt; or as is said in the case of *Jackson v. Blodgett*, 5 *Cow.*, 296, the mortgage "cannot exist as an independent security in the hands of one person while the bond belongs to another." This proposition is true, and a simple transfer of the mortgage without the debt, or note which is the evidence of the debt, is a nullity, for distinct from the debt, the mortgage has no determinate value; and

also the transfer of the debt only, reserving the pledge as an independent security, renders the mortgage a nullity. In legal parlance, the pledge being an incident to the debt, so far as regards its determinate value, it cannot be detached from the debt. It seems, therefore, that in order to work an extinguishment of the mortgage security, the transfer must be with intent to separate the one from the other; that is to detach the debt so as to leave the mortgage a separate and independent security.

The mere fact, however, that after the assignment of the debt, the mortgage remains in the hands of the mortgagee, or in the hands of any person other than the assignee of the debt, will not of itself work an extinguishment of the mortgage security. To do so, the mortgage must be held to operate as a separate independent security. It is said by a very able jurist that "if a mortgage is made to one person to secure several notes or bonds made to him, and the mortgagee assign the notes or bonds to different persons, but continues to hold the mortgage security in his own name, he will hold it in trust for the several persons to whom he has assigned the mortgage notes, bonds, or other evidences of the debt due him." *Perry on Trusts, Sec.* 593. This is upon the principle that the mortgage security is an incident to the debt, and follows or passes with the assignment of the debt, unless by the intent of parties it is detached from the debt.

In the case at bar, the evidence will not at all justify the conclusion that it was the intention of any one of the parties concerned, to separate or detach the mortgage securities from the debt, and therefore the point so strongly urged by the counsel for plaintiff in error, will not, as an abstract principle of law, apply to this case.

But did the assignment to the bank of itself extinguish the mortgage securities? Under the act of Congress, the bank is permitted to hold and convey such real

estate as shall be mortgaged to it in good faith by way of security for debts previously contracted, or such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. Now whether the sale and assignment of the notes to the bank were not made in satisfaction of or security for a debt previously contracted is not at all clear from the evidence reported in this case. It is not shown by the evidence for what purpose the sale and assignment were made to the bank; and to say that the notes and mortgages were assigned to the bank for a debt created *in presenti* would be the assumption of a fact not proved in the case. And it will hardly be urged that the court shall presume a person or a corporation to have been guilty of the violation of law; and hence, it will not be presumed that the bank received the notes and mortgages for a debt created *in presenti*. It has an undoubted right to take and hold such securities for a debt previously contracted. Was it not the intention of Congress to prohibit banking associations, organized under the law, from dealing in real property as a business independent of their legitimate banking operations? This would seem to be the purpose of the limitations in the act; and from all that appears in the record, there is nothing to justify the conclusion that these limitations have been transgressed in this case.

But the notes and mortgages passed into the hands of a person in no way incapacitated to take and receive them. Herman Kountze, the plaintiff in the court below, and defendant in error here, became the owner of them in good faith for value, and in *Willmouth v. Crawford*, 10 *Wend.*, 343, it was contended that the note was given to a corporation for a purpose or consideration for which the law forbid the corporation to receive "any note or other evidence of debt in payment." The court held that "conceding the note to be taken without

14

authority, it is valid in the hands of a *bona fide* holder."

It, however, appears that while the notes remained in the hands of the bank, Richards the plaintiff in error paid to it, in excess of the interest stipulated in the original contract, the amount of $8.96. This sum according to the rule stated in the fourth proposition, should have been deducted from the debt as of the time when it was paid, and the finding and decree should have been for $949.28. Therefore the finding must be made, and decree now rendered in this court, in favor of Herman Kountze and against T. W. T. Richards in accordance with the views expressed in this opinion.

DECREE ACCORDINGLY.

MAXWELL, J, concurred. LAKE, Ch. J, did not sit, having tried the cause in the court below.