Lincoln Building and Saving Association v. Graham.

THE LINCOLN BUILDING & SAVING ASSOCIATION, APPELLEE, v. MICHAEL GRAHAM, APPELLANT.

1. Corporations. Though a corporation may be so defective as to render the franchise wholly invalid in a proceeding against it by the state, still its corporate existence, when acting under color of a franchise, cannot be questioned in a suit where it would arise collaterally.

2. ———: INTEREST ON LOANS. Persons associated and incorporated under section 123 and subsequent sections of Chapter XXV of the Revised Statutes of 1866, for the transaction of lawful business, have no authority as a corporation to charge and receive interest on loans made by them, to exceed the maximum rate allowed by law; and all loan contracts made by such corporation for interest in excess of the rate fixed by law, are affected with the vice of usury.

3. Statutes. An expository statute, which is substantially in the nature of a mandate to the courts to construe and apply a former law, not according to judicial, but according to legislative judgment, is inoperative, and cannot control the courts in interpreting the law and declaring what it is.

4. ———. The making of statutory laws, and their exposition and application to cases as they arise, are clearly and distinctly two different functions—the former is allotted by the constitution to the legislature, the latter to the courts.

THIS was an appeal from a decree rendered in the district court for Lancaster county. Tried below before POUND, J., who found the amount due plaintiffs to be the sum of $220.38, and that there was still to become due from the defendant Graham the sum of $10.17 per month, for each and every month yet to elapse before the stock in the plaintiffs' association shall become of the value of $200 per share. A decree was accordingly rendered directing the sale of the mortgaged premises, to satisfy said sum of $220.38, the surplus, if any, to be retained in court to abide the further order thereof; plaintiffs to pay the costs. From this decree defendant appeals.

*Brown, England & Brown,* for appellant.

1. The defendant is not estopped from denying the legal organization of the plaintiff, if its incorporation was void. *Welland Canal Co. v. Hathaway,* 8 Wend., 480. Angell & Ames on Corporations, 353.

2. The act of the legislature approved February 18, 1873, entitled " An act to enable associations of persons for raising funds to be loaned among their members for building them homesteads and other purposes, to become bodies corporate," did not cure the defect in the plaintiff's organization. Said act is unconstitutional and void, for the following reasons, to wit: (a) It contains two subjects. (b) The object is not expressed in its title. (c) It is retroactive, and impairs the obligation of contracts then existing, or what is the same principle, attempts to make a contract where none existed before its enactment. Constitution 1867, Art. I, Sec. 12. Sedgwick on Con. Law, 192. Cooley on Con. Lim., 369. *Medford v. Learned,* 16 Mass., 215.

3. The evidence clearly proves the transaction to have been usurious. *Riesin v. The William Tell Saving*

*Fund Association*, 39 Penn. St., 137 and 154. *Philanthropic Association v. McKnight*, 35 Penn. St., 470. *Melvill v. American Benefit, etc.*, 33 Barb., 103. *Mutual Savings Bank v. Willcox*, 24 Conn., 147.

*Harwood & Ames*, for appellee.

1. The constitutional provision to which the act is said to be obnoxious, has been frequently construed, and it has been universally held that any matter properly connected with the subject named in the title and calculated to carry out its spirit and object is included therein, within the meaning of the constitution, and may properly be included in the act. *Tuttle v. Strout*, 7 Minn., 464. *People v. State Ins. Co.*, 19 Mich., 392. *McCaslin v. State*, 44 Ind., 151. *State v. Town of Union*, 33 N. J. L., 350. *Simpson v. Baily*, 3 Oregon, 515. *The People v. Commissioners*, 47 N. Y., 501. It appears distinctly from the title of this act, that its object is to authorize the incorporation of associations to transact just such a business as is transacted by the plaintiff, and the legalizing of such incorporations already existing is a proper part of the subject matter.

2. The contract is not usurious within the meaning of our statute on the subject of interest. The transaction is a mutual one, by which the borrower profits to as great a degree as members who do not borrow, and is equally interested in the allowance of premiums, and the prompt payment of interest and dues. The dues, however, have properly nothing to do with the loan, and do not affect its character one way or the other. They are paid solely in consideration of membership and for the purpose of raising a fund to be loaned, and are demandable equally from those who borrow and those who do not. The interest is at 12 per cent, the rate allowed by law, and may as well be paid monthly as in any

other way.   The principal sum advanced or loaned to the member is never to be repaid, and the penalties are demandable only in case of a default of payment, whether by borrowers or non-borrowers, and at the worst cannot be regarded otherwise than in the light of the penalty to a common law bond.   As they are incurred or not, at the option of the payor, they cannot be construed to make the contract usurious.   What can be so construed is not apparent   *Lucas v. Greenvill B. Ass.*, 22 Ohio St., 339.   *Citizens Mutual Loan Ass. v. Webster*, 25 Barb., 263.   *Burbage v. Cottow*, 8 Eng. L. and Eq. R., 57.   *Spencer v. Tilden*, 5 Cow., 144, 149. *Hall v. Doggett*, 6 Cow., 652.   *Cumming v. Williams*, 4 Wend., 680.   *Hall v. Hoggart*, 17 Wend., 280.

GANTT, CH. J.

This is an appeal from a decree rendered in an action to foreclose a mortgage.   The plaintiff claims to be a corporation, organized under the general incorporation laws of this state.   From the record in the case, it appears that the defendant was a shareholder in the association of ten shares of stock; that he purchased one thousand dollars, being equal in amount to five shares of stock; that he executed the mortgage in question in the case to plaintiff for the sum of one thousand dollars, but actually received on the loan only $517.60, and that the balance of the one thousand dollars was retained by plaintiff as a bonus on the loan.   Upon taking the loan and execution of the mortgage, the five shares held by the defendant reverted to the association.   It further appears from plaintiff's own testimony that during the years 1872, 1873, and 1874, the defendant made payments on this loan and five shares which had reverted to the association in the aggregate to the amount of $356.31.

The first defense to this action is, that the "Lincoln Building and Saving Association was not a corporation duly organized under the laws of the state," but "that the plaintiff was organized for an illegal purpose to evade and violate the laws of the state on the subject of interest, and was illegal, and all its acts void." This is not a denial of the corporate existence of the association, but substantially an allegation that it was illegally incorporated for an illegal purpose.

In *Abbott v. Omaha Smelting Co.*, 4 Neb., 420, it is held, that " in order to establish a corporation it is necessary to show user of a corporate franchise by an association of persons, though the organization may be so defective as to render the franchise wholly invalid in a proceeding against it by the state," but " the existence of such corporation, acting under color of a franchise, cannot be questioned in a suit where it would only arise collaterally, because the state, the party chiefly concerned, could not be heard by counsel." *Buffalo Railway v. Cary*, 26 N. Y., 77.

The second defense to the action is the plea of usury. It was admitted that the association was incorporated under section 123, and subsequent sections of chapter XXV, of the general incorporation laws of this state. R. S. 1866, p. 232. Gen. Stat. 1873, p. 198. Section 123 provides, that "any number of persons may be associated and incorporated for the transaction of any lawful business." Sections 124 and 137 grant and define the corporate powers of the association, and provide that it may "make by-laws, not inconsistent with any existing laws, for the management of its affairs." Now, at the time the plaintiff was incorporated, Chapter XXVIII of the Revised Statutes of 1866 provided that the rate of interest upon a loan or forbearance of money should not exceed twelve per cent per annum. But article seven of the articles of the association provides that the funds

14

of the association shall be put up at auction and sold to the member who shall offer the highest bonus therefor, and that he shall execute his mortgage to the association for the full amount, which shall bear interest at the rate of twelve per cent per annum, payable monthly; and that the purchaser of two hundred dollars shall be held to have received his final dividend on one share of stock, which shall revert to the association. Hence, it seems that, although the plaintiff claims to be a building and saving association, yet according to the facts in the case, when considered in the light of the laws under which it was incorporated, and under which the loan was contracted, it clearly appears to be an institution organized to loan out its funds at usurious rates of interest, in such manner, and to receive payment in such way, as to evade the penalties of the usury laws. But, however ingenious such device may be contrived, it cannot receive the sanction of the courts, because it is a violation of "existing laws;" and therefore the transaction between the parties in this case must be treated as a mere loan of money, under a contract which is tainted with the vice of usury. *Reiser v. Tell Association*, 39 Pa. St., 142. *Denny v. West Phila. S. & B. Association*, 39 Pa., St., 156. *Melville v. Am. Benefit B. A.*, 33 Barb., 114.

The loan was contracted and the mortgage was executed on the second day of August, 1872, and the plaintiff had no authority in law to receive a bonus or usurious interest upon the loan made by it. It has been held several times by this court, that if, "by the terms of the contract between the lender and the borrower, the lender receives or reserves a greater rate of interest than the maximum allowed by law, such contract is affected with the vice of usury; and it makes no difference whether the usurious interest is expressed in terms in the instrument given for the payment of the debt created by the

loan, or whether it is taken as a bonus, or secured by any other corrupt agreement, device or shift, at the time of the contract." *Richards v. Kountze*, 4 Neb., 200.

But it is contended on the part of the plaintiff, that all the acts and contracts of the association were legalized and made valid and binding by the act of February 18, 1873, entitled "An act to enable associations of persons for raising funds to be loaned among their members for building them homesteads, *and other purposes*, to become bodies corporate." The words "and other purposes" must be treated as a mere nullity, because they express nothing, as a compliance with the constitutional provision which declares that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title."

Then, the title is simply to enable associations of persons to become bodies corporate for the purposes expressed. But section three legalizes "all contracts and loans made by any corporation or association already formed," under chapter XXV of the Revised Statutes of 1866, with any member thereof, and section four defines what "shall be deemed in law a waiver of anything in such contract or loan that might be deemed usurious in the same under the laws of this state, at the time the same was made and securities given." And we are now asked to disregard the vested rights accrued to defendant by virtue of the laws under which the contract was made, and to determine the rights of the parties under the act of 1873. To do so would not only give this act a retroactive operation, but it would also give effect to an expository law in which one legislature attempts to interpret the statutes written by another legislature seven years before, and thereby adjudicate upon private rights which had accrued under the former laws. The law under which the loan was made, not only inhibited the bonus reserved by the plaintiff, but it also gave the de-

fendant the right to protect himself against the payment of such usury, and save his property from such usurious exactions. This is a vested right under the law, of which the constitutional provision declares he shall not deprived, and therefore it seems plain that this act of 1873 must be destitute of a retroactive force, not only because it is judicial, but also because it contravenes that provision of the constitution which declares that no person shall be deprived of his life, liberty, or property without due process of law. It is well understood, as a fundamental principle in our system of government, that the making of statutory laws, and their exposition and application to cases as they arise, are clearly and distinctly two different functions; the former is allotted by the constitution to the legislature, the latter to the courts.

Again, the two sections referred to are not in the nature of a declaratory statute, nor are they in the nature of a curative act; but they purport to be an interpretation of former laws, and are substantially in the nature of a mandate to the courts to construe and apply the former laws, not according to judicial, but according to legislative judgment. Can the legislature exercise such judicial authority? By Art. II, of the constitution, the powers of the government are divided into three distinct departments, "the legislative, executive, and judicial, and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others," except as therein expressly directed or permitted. Hence the powers of the legislature are to enact laws, not to expound them; and the powers of the courts are to interpret the law, declare what it is, and apply it to cases as they arise.

In respect of the small amount exacted from the defendant as fines, it is only necessary to observe that the law under which the plaintiff was incorporated did not

give it authority to impose such fines, and therefore the amount so paid must be applied in discharge of the debt *pro tanto*.

We conclude that, according to the law under which the loan was contracted, the transaction between the parties must be treated simply as a loan of money, and, under our statute relating to interest, the plaintiff is entitled to receive only the principal of the debt contracted, less the bonus reserved and the payments actually made by the defendant to the plaintiff; and after making these deductions, we find there is still due to the plaintiff, on the debt, the sum of $161.39. Therefore the usual decree will be rendered for plaintiff for the amount so found in its favor, and the plaintiff to pay the costs.

DECREE ACCORDINGLY.