Knox v. Williams.

24 630
31 208
24 630
33 851
24 630
34 515
24 630
39 491
39 667
24 630
40 896
41 42
24 630
46 385
116 899
24 630
58 338
24 630
60 134

J. M. KNOX ET AL., PLAINTIFFS IN ERROR, V. GEORGE WILLIAMS, DEFENDANT IN ERROR.

1. **Usury:** BONA FIDE PURCHASER: ONUS PROBANDI. Where usury in the original transaction for which a negotiable promissory note is given is proved, it devolves on the holder to show either that he is a *bona fide* purchaser before maturity without notice, or that he purchased from one who had purchased said note in good faith before due and without notice.

2. ———: ———: PAYMENTS APPLIED PRO TANTO. Every subsequent security given for a loan originally usurious is subject to the plea of usury, and when the proof of usury is sufficient the court will apply all payments of interest as a payment *pro tanto* of the principal.

3. **Chattel Mortgage:** TENDER. An absolute tender of the amount due upon a promissory note secured by chattel mortgage—the tender being made the day after the debt is due, but kept good—will have the effect to divest the lien of the mortgage.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*L. W. Billingsley* and *William H. Woodward*, for plaintiffs in error, cited: *Tompkins v. Batie*, 11 Neb., 151. Abbott's Trial Evidence, 141. *Adams v. Bank*, 4 Neb., 370. Jones Chattel Mortgages, Secs. 434–439.

*Lamb, Ricketts & Wilson*, for defendants in error, cited: *Murry v. Cunningham*, 10 Neb., 167. *Rice v. Cann*, 35 N. W. R., 465. *Loughborough v. McNevin*, 14 Pac. Rep., 369. Wells on Replevin, Secs. 54, 362.

MAXWELL, J.

In July, 1885, the defendant in error executed and delivered to John P. Dorr a promissory note, of which the following is a copy:

"LINCOLN, NEB., July 29, 1885.

"January 29, 1886, after date, for value received, I promise to pay to the order of John P. Dorr three hun-

dred and forty dollars, with interest at the rate of 10 per cent per annum from date until paid. Payable at Dorr Bro's. office, Lincoln.

"$340. Due Jan. 29, —86.

"Attest: H. H. Bulkeley. GEORGE X WILLIAMS.
his / mark

This note was secured by a chattel mortgage on certain personal property of Williams.

In January, 1886, Williams executed a second note to Dorr Brothers, apparently as interest for the excess of 10 per cent on the note first given, as follows:

"LINCOLN, NEB., Jan. 27, 1886.

" April 27, 1886, for value received, I promise to pay to the order of Dorr Brothers thirty-six and $\frac{50}{100}$ dollars, at their office, Lincoln, Neb., with interest at the rate of ten per cent per annum from date until paid.

"Due 4—29—86. GEORGE X WILLIAMS.
his / mark
"Attest: H. H. Bulkeley."

The testimony shows that the original loan for which the note for $340 was given was but $300. Various payments were made by Williams on the note prior to August, 1886, the exact amount being a matter of dispute between the parties. In August of that year Williams executed and delivered a new note to Dorr in lieu of those previously given, as follows:

"LINCOLN, NEBRASKA, August 18, 1886.

"September 1, 1886, after date, for value received, I promise to pay to the order of John P. Dorr, three hundred dollars, with interest at the rate of 10 per cent per annum until paid. If any of the said interest is not paid when it becomes due, it shall bear interest at the rate of 10 per cent per annum from the time same note becomes due.

"GEORGE X WILLIAMS.
his / mark
"Attest: J. A. Marshall."

This note was secured by a chattel mortgage on certain personal property of Willliams. On the afternoon of the

4th day of September, 1886, Dorr professes to have transferred the note in question to the Capital National Bank of Lincoln. Sometime afterwards the bank transferred the note to the plaintiff. While the note was in the hands of the plaintiff, the defendant in error made a formal tender of $250 in gold to the plaintiff, which he refused to receive. He thereupon took possession of the property described in the chattel mortgage. The defendant in error then brought an action of replevin, and on the trial of the cause the jury returned a verdict as follows: "We, the jury duly empaneled and sworn in the above entitled cause, do find: That the first note given by the plaintiff to the defendant, Dorr, for the sum of $340, to secure the loan of $300, was usurious; that plaintiff had paid to defendant Dorr on said note or loan the sum of $174.22; that there is still due on said note or loan the sum of $125.78.

"2d. That the second note given by the plaintiff to the defendant, Dorr, dated October 18, 1886, for the sum of three hundred dollars, and set up in the pleading, was usurious and void.

"3d. That the right of property and right of possession of said property when this action was commenced was in the plaintiff, and we assess his damages in the premises at the sum of two dollars.

"J. R. COOKE,
"*Foreman.*"

The defendant excepted to the form of the verdict, and asked to have the jury polled, and thereupon the jury was polled, each juror answering that the verdict was his verdict. A motion for a new trial was overruled, and judgment entered on the verdict, to reverse which the cause was brought into this court by petition in error.

Two questions are presented by the record. 1st. Was the bank a *bona fide* purchaser of the note before it became due? 2d. Was the tender of the defendant in error to the plaintiff sufficient to divest the mortgage lien?

The cashier of the bank in question was examined as a witness, but seems to have been unable to testify to particulars in the case. His testimony taken as a whole throws no light on the transaction. Mr. Dorr testifies in regard to the transaction on his cross-examination, as follows:

Q. Will you swear you did not make any arrangement with any one to have him take it (the note) from the bank?

A. I will swear I made no arrangement with Knox to have it taken from the bank.

Q. With anybody else?

A. No, I will not.

Q. What arrangement with Spencer?

A. I went to Mr. Spencer and told him the note was in the bank, and past due, and I did not want the bank troubled, and I asked him to get somebody to go there and buy the note.

Q. Did you furnish the money to buy the note?

A. I did not.

Q. Have you since this date?

A. I have not.

Q. You have $301 as the proceeds of that note, without having paid out anything in return?

A. I have.

Q. Have you agreed with Mr. Billingsley to secure Mr. Knox?

A. Why, there was an understanding that if there was any expense in the collection of the note I should pay it.

He afterwards testifies that as he was liable on the note as endorser, therefore he did not want the bank to pay the expense of collection.

The rule as stated by this court in *Darst v. Backus*, 18 Neb., 231, is, that where usury in the original transaction for which negotiable promissory notes were given is proved, a party who claims to have purchased the notes before ma-

turity must assume the burden of proof to show that he
is a *bona fide* purchaser for value before maturity and
without notice.    To the same effect are *Savings Bank v.
Scott*, 10 Neb., 86.    *Olmstead v. N. E. Mtge. Sec. Co.*, 11
Id., 492.    *Cheney v. Cooper*, 14 Id., 416.    *Evans v. De
Roe*, 15 Id., 631.    And every subsequent security given
for a loan originally usurious, however remote or often
renewed, is subject to the plea and proof of usury; and
when the proof of usury is sufficient, the court will
apply all payments of interest upon such usurious loan as
a payment, *pro tanto*, of the principal.    *Nelson v. Hurford*,
11 Neb., 465.

That there was usury of an aggravated character in the
original transaction is proved beyond a doubt.    There is
an utter failure of proof to show that the bank was a *bona
fide* purchaser of the note in question before maturity.
The plaintiff, therefore, having obtained the note after it
became due from one who held subject to the maker's
equities, is not protected.    The note in his hands was sub-
ject to the same defenses as if held by the payee.

Usury being shown, all payments upon the note,
whether as principal or as interest, are under the statute to
be applied in payment of the principal.    The payments
are shown to have greatly exceeded the sum of $50.    It
was the duty of the plaintiff in error, therefore, to have
accepted the $250 tendered by the defendant in error.
This tender was absolute, and without qualification, and
has since been kept good.    It therefore divested the lien
of the mortgage.    *Tompkins v. Batie*, 11 Neb., 147.    The
plaintiff in error had no lien on the property at the time
he took possession of the same and was not entitled to
possession thereof.    The judgment of the district court is
clearly right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.