## CHARLES McDONALD V. L. AUFDENGARTEN.

FILED JUNE 6, 1894.    No. 5075.

1. **Negotiable Instruments:** BONA FIDE HOLDERS: EVIDENCE. In an action by the transferee of a negotiable promissory note properly indorsed before maturity, the production of the note shows *prima facie* that he is a *bona fide* holder, and is sufficient to entitle him to recover.

2. ———: ———: ———: BURDEN OF PROOF. In an action against the maker of a negotiable promissory note by the indorsee thereof, before maturity, proof that the note is tainted with usury shifts to the plaintiff the burden of showing that he is a *bona fide* holder for value without notice.

3. **Usury:** NOTICE TO INDORSEE OF NOTE: EVIDENCE. When the defense to a note is usury, evidence that the indorsee knew at the time of the purchase that the payee usually loaned money at an usurious rate of interest, while insufficient of itself to charge the purchaser with notice of the defense, is competent to go to the jury as a circumstance to be considered, in connection with other proven or admitted facts, as tending to establish that plaintiff took the paper with notice of its infirmities. (*Blackwell v. Wright*, 27 Neb., 269.)

4. ———: RENEWAL NOTES. Every renewal of a note given for a usurious loan of money is subject to the defense of usury between the original parties and purchasers with notice.

5. ———: SUFFICIENCY OF EVIDENCE. The evidence considered, and *held* sufficient to sustain the plea of usury, and that plaintiff was not an innocent purchaser without notice.

6. **Review:** VERDICT. *Held*, That under the pleadings and proof plaintiff was entitled to recover a larger sum than was awarded him by the verdict.

McDonald v. Aufdengarten.

ERROR from the district court of Keith county. Tried below before CHURCH, J.

*George E. French* and *Grimes & Wilcox*, for plaintiff in error.

*E. J. Short* and *John J. Halligan, contra.*

NORVAL, C. J.

This action was brought by Charles McDonald upon two promissory notes signed by the defendant in error, each for the sum of $2,000, payable to the order of the Keith County Bank, and bearing date September 10, 1889. The petition contains the usual averments. The answer sets up the defense of usury. Plaintiff for reply denies each and every allegation contained in the answer, and avers that he purchased the notes before their maturity, for a valuable consideration, and without notice or knowledge of any of the transactions or matters pleaded in the answer. Upon the trial the jury returned the following verdict:

"CHARLES MCDONALD, PLAINTIFF, ⎫
          v.                        ⎬
L. AUFDENGARTEN, DEFENDANT. ⎭

"We, the jury in this case, being duly impaneled and sworn in the within entitled cause, do find that the consideration for the notes upon which this action was brought was usurious, and that when the plaintiff Charles McDonald purchased said notes he had notice of the usurious consideration for said notes, and that there is now due from the defendant to plaintiff the sum of $181.37.

"C. DEPRIEST,
"*Foreman.*"

Plaintiff presented to the court below a motion for a new trial, which was overruled, and judgment was rendered upon the verdict of the jury.

After the plaintiff had put in evidence the notes in controversy, and before he closed his case in chief, he offered to prove by his own testimony that he purchased the notes before maturity, for a valuable consideration, without notice of any defense existing against them. The testimony was excluded, and this ruling of the trial court is the foundation of the first assignment of error. The notes being negotiable in form, and properly indorsed by the payee, their possession by the plaintiff was sufficient to establish a *prima facie* case. At the time the offered testimony was excluded the defendant had not put any evidence, therefore the law presumed the plaintiff to be a *bona fide* holder for value. When the defendant introduced evidence establishing his defense of usury, the burden was thereby cast upon the plaintiff to show that he was an innocent purchaser of the paper for value, and before maturity. This is the settled rule in this state. ( *Wortendyke v. Meehan*, 9 Neb., 221; *State Savings Bank of Missouri v. Scott*, 10 Neb., 86; *Cheney v. Cooper*, 14 Neb., 416; *Evans v. De Roe*, 15 Neb., 630; *Darst v. Backus*, 18 Neb., 231; *Cheney v. Janssen*, 20 Neb., 128; *Knox v. Williams*, 24 Neb., 630; *Lincoln Nat. Bank v. Davis*, 25 Neb., 376; *First Nat. Bank of North Bend v. Miltonberger*, 33 Neb., 847; *Colby v. Parker*, 34 Neb., 511; *Suiter v. Park Nat. Bank*, 35 Neb., 372.) After the defendant rested, the plaintiff was permitted, on rebuttal, to go fully into the question of the *bona fides* of the transfer of the notes. This was the proper practice, since plaintiff was not required to produce proof on that branch of the case when introducing his evidence in chief.

Three assignments in the petition in error are based upon the rulings of the trial court in admitting in evidence certain canceled notes, which had been executed by the defendant to the Keith County Bank, and the bank books, and also the overruling of the plaintiff's motion to strike out the testimony of O'Brien and the defendant with reference to said books. The uncontradicted proofs show that

the notes sued on were renewals of numerous other notes
which had been given by the defendant to the bank, but
which had been returned to the defendant canceled.  These
canceled notes, the testimony of the witnesses above men-
tioned, and the bank books were permitted to go before the
jury for the purpose of establishing that the notes declared
upon were renewals of others executed by defendant for
the loan of money in excess of the legal or statutory rate.
The criticism made upon this class of testimony in the
brief of counsel is that the same was incompetent, until
some evidence was first introduced tending to show that
the plaintiff had notice or knowledge of the usurious trans-
action.   Defendant was not required, under the authorities
cited above, to establish in the first instance that plaintiff
was aware of the consideration for which the notes were
given; but it was legitimate and proper for the defendant
to prove that the notes were usurious, and having done
this, the burden of showing good faith was on plaintiff
below.

Complaint is made because the defendant was permitted
to testify what the customary rate of interest charged by
the Keith County Bank to its customers was from the lat-
ter part of 1885 until September, 1889, this being the period
during which the alleged usurious loans were made by the
bank to the defendant, and which are represented in part
by the notes sued on herein.   If this testimony was im-
properly admitted, plaintiff was not thereby prejudiced,
inasmuch as the same witness, but a moment before, had
stated, without objection, that the customary rate of inter-
est at which money was loaned by the different banks in
the county during the time mentioned in the interrogatory
criticised was "from twelve to thirty-six per cent per an-
num," which is precisely the same answer that was made
to the question to which plaintiff takes exception.   This
evidence was not of a very convincing character, and,
standing alone, falls far short of showing that plaintiff

knew, or had notice, when he purchased the notes that they were given in a usurious transaction; but for the same to be of any value, it should further appear that plaintiff knew, or was chargeable with notice, at the time of the purchase, that the bank or payee usually contracted for and charged interest for the use of money in excess of the legal rate. This court, in considering a similar question in the case of *Blackwell v. Wright*, 27 Neb., 272, uses this language: " While the fact alone that the purchaser of the note knew that the vendor and payee was loaning money at an usurious rate might not of itself be sufficient to charge the purchaser with notice of the defense of usury, yet it would be competent, as a circumstance to be considered in connection with other proven or admitted facts, as tending in that direction; and the court did not err in overruling plaintiff's objection to the question asked." In the case at bar plaintiff admitted on cross-examination that he himself made usurious loans, and knew when he bought these notes that the interest usually charged by the payee exceeded the rate fixed by statute. In view of this, and other facts disclosed by the record, we conclude that the objection to the question asked was properly overruled.

The three remaining assignments of error argued in the brief are as follows: The court erred in overruling plaintiff's motion made at the close of the testimony, to instruct the jury to return a verdict in his favor for the face of the notes and interest, less payments, amounting to $250, indorsed thereon; the verdict is not sustained by the evidence; and the verdict is contrary to the fourth and fifth instructions given by the court on its own motion. These assignments raise substantially the same questions, and will be considered together.

Are the notes in suit tainted with the vice of usury? The evidence upon this branch of the case is without conflict, and may be summarized as follows: The defendant has been for years a resident of, and engaged in business

in, Keith county.   In the year 1884 he commenced doing business with the Keith County Bank, by making deposits of money therein, subject to be drawn upon his checks. Prior thereto he entered into a contract with the bank, through its president, whereby it was agreed that the bank should furnish him the necessary money needed to carry on his business, and permit him to overdraw his account, and he was to pay the bank on such overdrafts interest at the rate of ten per cent per annum.   Under this arrangement the defendant overdrew his account with the bank at various times until June, 1886, he paying ten per cent on the money.   On the 1st day of June of the year last mentioned, the defendant's overdraft was $3,648.85, and on the last day of the month it had reached the sum of $7,246.38.   During the month of June, 1886, the defendant entered into another contract with the bank, by which it was agreed that he should pay twelve per cent interest upon all overdrafts from and after the first day of that month, and interest at that rate was thereafter charged on his overdrafts and added to his account monthly, except for the month of August, he was charged eighteen per cent; for November, fifteen per cent, and for April, 1887, he was charged forty-eight per cent.   The overdraft of the defendant at the bank continued to increase from June, 1886, until September 21st of the same year, when it reached nearly $12,000.   On said date the defendant executed and delivered to the bank his promissory note in the sum of $10,000, due November 1st following, drawing ten per cent interest after due.   Twelve per cent interest until maturity, or $240, was deducted from the face of this note, and the defendant was credited on his overdraft with $9,760.   On November 22, 1886, the defendant owed the bank the $10,000, besides an overdraft exceeding $3,500. On that day he executed to the bank his two promissory notes, one for $7,210, due in three months, and the other $5,375, maturing in five months, both by their terms draw-

ing interest at ten per cent after due, the notes being dis-
counted at twelve per cent for the time they were to run.
With the proceeds of these notes the $10,000 note was
taken up, and the remaining $2,000 was applied on his
overdraft. The two notes executed on November 22d were
renewed at their maturity by the defendant giving in lieu
thereof two other notes of $5,000 each, the balance due on
the surrendered notes being at the time paid in cash. The
two $5,000 notes were subsequently renewed by the de-
fendant executing to the bank other notes, which in turn
were likewise renewed, and so on, there being numerous
renewals of the debt, prior to the giving the notes in suit,
some of which renewals included the amounts of defend-
ant's overdrafts made after November 22d, and upon which
illegal interest had been charged and paid. Most of the
renewed notes included interest on the indebtedness at the
rate of eighteen per cent per annum, and, excepting the
two notes involved in this litigation, all were renewed at a
usurious rate. On September 10, 1889, the amount of the
indebtedness to the bank on the transactions already de-
tailed had been reduced by payments upon the principal of
$8,433, and upon interest $3,608.63, and these notes are
the last or final renewals of the balance of the indebtedness.

Upon the foregoing facts, it is contended that the defense
of usury is not available, even if the notes were in the
hands of the original payee. Counsel for plaintiff, in the
brief, say : " The original contract, by virtue of which
these banking transactions were had and this indebtedness
incurred, was free from the taint of usury, and it was only
after the debt of the defendant to the Keith County Bank
had reached $7,246.38, a sum much larger than that for
which plaintiff has sued, that any excess was charged."
The above sum of $7,246.38 represented the amount of
defendant's overdraft on June 30, 1886. Counsel are in er-
ror in stating that it was not until the indebtedness reached
that sum that interest in excess of the legal rate was paid,

since the undisputed testimony is to the effect that twelve per cent was charged on the average daily overdrafts for June, 1886, and that the amount of overdraft existing on June 1st, on which no usurious interest had prior thereto been contracted to be paid the bank, was $3,648.85. This correction, however, would only become important in case it should be determined that the notes in controversy were not usurious to the extent of the amount due the bank at the time interest in excess of the legal rate was first collected from the defendant by the bank on his overdraft. In *Richards v. Kountze*, 4 Neb., 200, GANTT, J., speaking for this court, says: "If the original contract is *bona fide*, and wholly free from the taint of usury, then no subsequent agreement to pay usury or an usurious premium upon the debt will invalidate the instrument given for the payment of the debt, or affect the original contract with the vice of usury, or prevent the collection of the debt with its legal interest. And this proposition, I think, is well founded in principle and just in equity, for, if there was once a valid subsisting debt, bearing interest, the contract creating such debt cannot be impaired or destroyed by a subsequent void agreement." The rule thus stated was affirmed in *Dell v. Oppenheimer*, 9 Neb., 454. We adhere to these decisions, but they are distinguishable from the cause under consideration. In each of the cases referred to, the action was upon the original contract of loan, which was not tainted with usury, and not upon the subsequent void agreement to pay usurious interest upon the contract after it matured. In neither was there any renewal of the original indebtedness by the giving of a usurious note. In the case at bar the action was not brought to recover the amount of the overdraft existing on June 1, 1886, and upon which no illegal interest had then been charged, but to recover upon notes, given in renewal of other notes, which included and represented numerous usurious transactions between the defendant and the bank. It should be

borne in mind that interest in excess of the lawful rate had been contracted for and paid, not only upon the notes of which these are renewals, but upon all overdrafts after June 1st, including the amount due upon the overdraft on that date. A loan of $10,000 at twelve per cent, as we have already stated, was made the defendant and the proceeds of the same credited to the defendant's account with the bank. More than double the amount which the defendant's account was overdrawn in June, 1886, has since been paid. It is true no usurious agreement was entered into when the notes in question were taken, and they on their face bear a legal rate; but being merely renewals of obligations which had been given in connection with numerous usurious transactions, the taint of usury attaches to them. It is the settled law of this state that every renewal of a note given for a usurious loan of money is subject to the defense of usury, to the same extent as if the action had been brought on the original obligation. (*Nelson v. Hurford*, 11 Neb., 465; *Knox v. Williams*, 24 Neb., 630.) We do not deem it necessary to review the authorities cited in the brief of plaintiff in error to sustain his contention. Most of them are in line with *Richards v. Kountze, supra*, and for the reason stated above are inapplicable. The jury in their verdict expressly found that the notes were usurious, and we are constrained to hold that the evidence is ample to support such finding.

It is next contended that the defense of usury is not available against this plaintiff. The rule is that one who purchases a negotiable note for value before due, in the usual course of business and without notice, is a *bona fide* purchaser, and takes the paper free from all defenses which existed in favor of the maker while the instrument remained in the hands of the payee. (*Wortendyke v. Meehan*, 9 Neb., 229; *Evans v. De Roe*, 15 Neb., 630; *Dobbins v. Oberman*, 17 Neb., 163; *Cheney v. Janssen*, 20 Neb., 128.) Applying this rule to the case at bar, did the evidence justify the jury

in finding that the plaintiff was not an innocent purchaser? It is undisputed that he paid for the notes $3,800, which was their full value; but that alone was not sufficient to entitle him to the protection the law affords a *bona fide* holder. Upon the subject of notice the plaintiff on rebuttal testified in answer to questions as follows:

Q. State what, if any, notice you had of the dealings of L. Aufdengarten with the Keith County Bank at the time of the purchase of these notes in suit.

A. I really had no information regarding his dealings with the bank.

Q. You may state whether or not you had any knowledge of any usurious transactions between L. Aufdengarten and the Keith County Bank.

A. I did not.

Q. Did you have any knowledge of any defense that could be set up to these notes?

A. No, sir; I had no knowledge whatever before I took the notes. I supposed it to be a straight business transaction.

Q. State what, if any, knowledge you had in regard to L. Aufdengarten's standing or reputation at that time.

A. I had known L. Aufdengarten for some years, and I had been in his place of business when he ran a store on the south of the track, and I knew that he was doing a large business in the mercantile line, and I was informed that he had a large ranch, well stocked with cattle at that time, and that he was the owner of a mill, or had a large interest in a mill.

Q. You may state whether or not you supposed at that time he was all right financially.

A. I had been all the time led to believe that he was one of the wealthiest men of this part of the country.

Q. State whether or not the Keith County Bank gave you any notice of any dealings or transactions that they had had with L. Aufdengarten.

Objected, as leading.

8

Q. State what notice they gave you of their dealings with the defendant.

A. They did not give me any information as to the character of their dealings at all.

Q. State whether they gave you any reasons for wanting to sell these notes or not.

A. The only reason they assigned was they wanted to realize some money on them.

*     *     *     *     *     *     *

Q. You may go on and state if anything was brought to your knowledge, either by sign, word, or deed, as to any usury or other defense to these notes.

A. There was no notice whatever of any kind.

It must be conceded by all, we think, that if the foregoing testimony stood alone, and that none of the other facts and circumstances disclosed by this record were to be considered, the jury would have been warranted in finding, nay, more, it would have been their duty to have found, that the plaintiff was a *bona fide* purchaser, before maturity, for value and without notice. There appear in the testimony facts which tended to show that plaintiff took the paper either under such circumstances which ought to have excited his suspicion, or with knowledge of facts which would have put a prudent person upon inquiry; which, if pursued, would have shown that the notes were usurious. We have already mentioned the fact that plaintiff had knowledge that the payee of the notes usually loaned its funds at a usurious rate of interest. Plaintiff admits having a conversation with the president of the bank some time prior to the purchase of these notes, in which the president proposed that the plaintiff discount some of the bank's paper, and mentioned that the bank held notes of the defendant, which he would dispose of, yet these notes sued upon had not, at that time, been given, and within four days after they were executed, plaintiff purchased them. Another fact to be considered is the manner in which the

notes were transferred. Each was indorsed on the back as follows: "Without recourse. By J. H. Carnahan, cashier of Keith County Bank." The character of the indorsement was not of itself sufficient to charge the plaintiff with notice of the informities of the paper. (*First Nat. Bank of Rapid City v. Security Nat. Bank of Sioux City,* 34 Neb., 71); but the jury were entitled to take the same into consideration, with all the other circumstances proved, in determining the character of the transfer. Notwithstanding the above indorsements on the back of the notes, the bank executed on a separate paper and delivered to the plaintiff at the time of the transfer the following instrument:

"SEPTEMBER 14, 1889.

"For value received, we hereby guaranty all reasonable costs or deficiencies of interest or principal that may occur in the collection of two certain notes signed by L. Aufdengarten, and payable to the order of the Keith County Bank, dated September 10, 1889, and coming due on January 10, 1890, and of two thousand dollars each ($2,000), and Nos. 4732 and 3. The above described notes being sold and assigned to the bank of Charles McDonald.

"KEITH COUNTY BANK,

"By H. CARNAHAN, *Cashier.*"

The foregoing and the writing on the back of the notes, all belonging to the same transaction and executed at the same time, must be construed together, and so construed we must hold do not constitute an indorsement according to commercial usage. (*Hatch v. Barrett,* 8 Pac. Rep. [Kan.], 134.) The peculiar manner of the indorsement of the notes, together with the other facts alluded to, are sufficient to sustain the finding of the jury that plaintiff was not a *bona fide* purchaser in the usual course of business, and the defense of the maker was not cut off by the transfer. There was no error, therefore, in refusing to instruct the jury to return a verdict for the plaintiff for the full amount demanded in the petition.

Under the pleadings and the evidence, plaintiff was en-entitled to recover a larger sum than $181.37, the amount awarded him by the verdict. The transactions between the bank and the defendant are set up with great particularity in the answer, consisting of thirty-seven paragraphs, the last two being a summary of the other thirty-five. In the thirty-sixth paragraph it is alleged that the total amount of money received by the defendant from the bank is $12,433, and in the last paragraph of the pleading the different items of payment on the principal are stated, which aggregate $8,433, as well as the several items of interest paid, amounting to $3,608.63. The total sum averred to have been paid on the loan is $12,041.63, or $391.37 less than the aggregate amount of moneys actually received from the bank. The evidence tended to establish the various allegations in the answer as to the amounts the defendant received on the loan and the payments made thereon by him. The verdict is $210 too small. (*Hall v. First Nat. Bank of Fairfield*, 30 Neb., 99.) The judgment is therefore reversed and the cause remanded.

REVERSED AND REMANDED.