NATIONAL MUTUAL BUILDING & LOAN ASSOCIATION OF NEW YORK V. JASON O. KEENEY ET AL.

FILED DECEMBER 8, 1898. NO. 8522.

1. **Foreign Building and Loan Associations: INTEREST: STATUTES.** In an action of foreclosure by a foreign building and loan association the rate of interest which it may contract for, and which it may collect, is not regulated by chapter 14, Session Laws 1891, for that chapter, by its terms, is solely applicable to domestic building and loan associations.

2. ———: ———. In an action of foreclosure brought by a building and loan association incorporated under the laws of a state other than Nebraska, the rights of plaintiffs with respect to interest are governed by chapter 44, Compiled Statutes; and if, for the use of the money sought to be collected, the proofs, upon proper issues, show that more than ten per cent interest per annum has been contracted for or received under any pretense whatever, the penalties prescribed by said chapter 44 for contracting for or receiving usury should be enforced.

APPEAL by both parties from the district court of Harlan county. Heard below before BEALL, J. *Reversed.*

*C. M. Miller,* for plaintiff.

*John Everson, contra.*

RYAN, C.

In the district court of Harlan county plaintiff filed its petition for the foreclosure of a certain mortgage made to it by Jason O. Keeney and his wife, Mary E. Keeney. The bond secured by the mortgage referred to was made by Jason O. Keeney to plaintiff on June 18, 1890. The conditions of this bond were that it should be void if Jason O. Keeney paid, or caused to be paid, to plaintiff the sum of $500, with interest at the rate of six

per cent per annum, together with a monthly premium of $2.50 for eight years, or until the maturity of five shares of plaintiff held by Keeney if they matured within said eight years, and in addition thereto, $3 for monthly dues on said shares, and, also, all fines which plaintiff might meantime impose upon said Keeney for default in his payment of interest, premium, or dues. There was by the terms of the bond allowed a certain time within which payment of interest, premium, or dues might be made after the maturity of each, and upon failure within such fixed time to make the payment contemplated plaintiff was entitled to foreclose its said mortgage. It was alleged in the petition that plaintiff had been compelled to pay taxes on the mortgaged premises and that defendants had failed to make payments of interest, etc., and had failed to reimburse plaintiff the amount it had paid in discharge of tax liens. There were answers, in one of which the right of plaintiff to do business in this state was called in question, but as the loan in this case was made before the statute was enacted which permitted corporations of the class to which plaintiff belongs to do business only upon obtaining certain permission, we shall not enter upon a discussion of that question. In another answer was a plea of usury, the nature of which shall be hereinafter described. There was a decree for less than plaintiff's demand, but in excess of what defendants concede was correct, and both parties have appealed.

George R. Sutherland, secretary of plaintiff, testified that plaintiff was, during the transactions under consideration, and still continues to be, a corporation created under the laws of the state of New York; that Jason O. Keeney became the holder of stock of that corporation upon his written application of date February 7, 1890, which application was approved by the executive committee of plaintiff May 15, 1890; that on June 18, 1890, plaintiff made a loan to Jason O. Keeney of $500, which amount was paid to him in checks of said plaintiff. This

witness, after describing the manner in which business was ordinarily transacted between plaintiff and parties who borrowed money of it, stated that Keeney paid dues on his certificate at the rate of $3 per month from and including February, 1890, to and including April, 1894, amounting to $153; that the interest had been paid from June 18, 1890 to May 1, 1894, amounting to $112.75; and also that Keeney had paid, or caused to be paid, $2.50 per month from June 18, 1890 to April 1, 1894, amounting to $113.50. In all there was paid, as he testified, $375.25. This witness also testified that because of defaults of Keeney in making other payments his stock, which had been pledged as collateral security, had been declared forfeited, and thereby that in accordance with the terms on which he had pledged his stock Keeney was entitled to, and had been credited, its so-called withdrawal value of $70.75, interest and premium, and $82.95 applied on the principal. Neither this witness, nor any other, explained why, originally, two checks were made for the amount loaned to Keeney. By a reference to the checks themselves we find that one was for $13.50. The other was for the difference between that sum and $500. The small check was by its payee, Keeney, indorsed to plaintiff. In a receipt signed by Keeney this check was described as "1 ck. for 5 mos. & 12 days. Pr., $13.50." In argument it is spoken of as part of the premium, and we so understand it. The application for a certificate of stock was, it. seems, to qualify Keeney to obtain a loan, and hence this part of the premium should, we think, be treated the same as premiums paid after the making of the bond and mortgage. The payments made by Keeney for the use of $500 were then as follows:

Between February, 1890, and April, 1894, dues on
     certificates ................................$153 00
Interest from June 18, 1890, to May 1, 1894...... 112 75
Premium from June 18, 1890, to April 1, 1894.... 113 50

         In all these payments amounted to......$379 25
     To ascertain what interest had been paid until April

1, 1894, there should be deducted one month's interest on $500, at six per cent, which is $2.50. This deduction from the gross sum leaves $376.75 as the amount paid by, or on behalf of, Keeney, on account of his loan of $500 previous to April 1, 1894. The interest on $500 between June 18, 1890, and April 1, 1894, at ten per cent per annum amounts to $153.92; therefore, if $376.75, the amount of the sums paid, is to be treated as payment simply for the use of $500 during this time, there has been paid $222.83 in excess of what should have been paid at the rate of ten per cent per annum. The basis of plaintiff's action was a bond secured by the mortgage sought to be foreclosed. The petition was solely for a foreclosure and contained no averment foreign to that purpose. The allegations with reference to the issue of stock certificates were made to show how, by the cancellation of said stock, the defendant became entitled to a credit by plaintiff on the bond which had been given by Keeney. It might be possible, if the petition had contained averments showing that by virtue of the ownership of certain shares of stock Jason O. Keeney's interests and liabilities as a stockholder should be ascertained, declared, and enforced in an equitable action, that the district court should have ordered such an accounting; but there was an entire absence of averments on which such relief could be predicated. The petition discloses that Jason O. Keeney had been a stockholder, had been so far in default of the performance of his undertakings that the corporation had the right to elect, and, in fact, had elected, to declare his rights as a stockholder to have ceased. It was alleged in the petition that this entitled Keeney to a certain credit, which had been given him by plaintiff, and there was uncontradicted evidence to sustain these propositions. As this credit was but the aggregate sum of $153.70 which had actually been paid, we shall place it under the head of actual payments and not otherwise credit it because of the cancellation of the shares of stock.

Plaintiff, during all the transactions involved in the history of this case, has been, and still is, a foreign corporation. The provisions of chapter 14, Session Laws 1891 (Compiled Statutes, ch. 16, secs. 148a-148r) are therefore inapplicable, and whether or not the contract was usurious must be determined by the provisions of chapter 44, Compiled Statutes. In the first section of this chapter the rate of interest is, in effect, limited to ten per cent per annum on any loan or forbearance of money, and it is provided by the fifth section of said chapter that if in any action on a contract for the loan of money proof be made that illegal interest has been directly or indirectly contracted for, taken, or reserved, the plaintiff shall only recover the principal, without interest, and defendant shall recover costs. We cannot see any escape from the conclusion that there has been disclosed in this case a contract for a rate of interest in excess of ten per cent per annum. It is not necessary to further elaborate our views, for they may be gathered from an examination of the following cases: *Richards v. Kountze*, 4 Neb. 200; *Lincoln Building & Savings Ass'n v. Graham*, 7 Neb. 173; *Randall v. National Building, Loan & Protective Union*, 42 Neb. 809; *Livingston Loan & Building Ass'n v. Drummond*, 49 Neb. 201. The plaintiff is therefore entitled to recover upon his bond the sum of $500, less the sum of $376.75, without interest, and to recover such further sums as were paid in the discharge of tax liens, with seven per cent interest per annum thereon from the time of such payments, but plaintiff is not entitled to costs. Plaintiff's appeal is disposed of by the foregoing general discussion and announcement of our conclusions. On the appeal of the defendants the judgment of the district court is reversed and the cause remanded with directions to enter a decree of foreclosure for the amounts already indicated as being the measure of plaintiff's right of recovery.

REVERSED AND REMANDED.